UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


SHYTELIA PEARSON,

        Plaintiff,                                Hon. Ellen S. Carmody

v.                                               Case No. 1:14-CV-960

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.
_____/

**OPINION**

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act. On December 3, 2014, the parties agreed to proceed in this Court for all further proceedings, including an order of final judgment. (Dkt. #9).

Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence it shall be conclusive. The Commissioner has found that Plaintiff is not disabled within the meaning of the Act. For the reasons stated below, the Court concludes that the Commissioner's decision is not supported by substantial evidence. Accordingly, the Commissioner's decision is **reversed and this matter remanded for further factual findings pursuant to sentence four of 42 U.S.C. § 405(g)**.

## STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This

standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## **PROCEDURAL POSTURE**

Plaintiff was 37 years of age on her alleged disability onset date. (Tr. 242). She successfully completed high school and previously worked as a church janitor and a teacher's aide. (Tr. 81, 94). Plaintiff applied for benefits on January 27, 2011, alleging that she had been disabled since January 10, 2003, due to major depression, recurrent psychotic features, panic disorder, arthritis, bone fragments in her left knee, fibromyalgia, back pain, and asthma. (Tr. 242-56, 274).

Plaintiff's applications were denied, after which time she requested a hearing before an Administrative Law Judge (ALJ). (Tr. 128-214). On June 16, 2011, Plaintiff appeared before ALJ Michael Condon with testimony being offered by Plaintiff and a vocational expert. (Tr. 88-127). In a written decision dated April 19, 2013, the ALJ determined that Plaintiff was not disabled. (Tr. 72-82). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (Tr. 1-8). Plaintiff subsequently initiated this pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

Plaintiff's insured status expired on September 30, 2011. (Tr. 74). Accordingly, to be eligible for Disability Insurance Benefits under Title II of the Social Security Act, Plaintiff must establish that she became disabled prior to the expiration of her insured status. *See* 42 U.S.C. § 423; *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

## ANALYSIS OF THE ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability.  *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1]  If the Commissioner can make a dispositive finding at any point in the review, no further finding is required.  *See* 20 C.F.R. §§ 404.1520(a), 416.920(a).  The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining her residual functional capacity.  *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and she can satisfy her burden by demonstrating that her impairments are so severe that she is unable to perform her previous work, and cannot, considering her age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy.  *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528.  While the burden of proof shifts to the Commissioner at step five of the sequential evaluation process, Plaintiff bears the burden of proof through step four of the procedure, the point at which her residual functioning capacity (RFC) is determined.  *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*,

---

[1] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

The ALJ determined that Plaintiff suffers from: (1) asthma; (2) major depressive disorder; (3) generalized anxiety disorder; (4) panic disorder with agoraphobia; (5) post-traumatic stress disorder (PTSD); (6) obsessive-compulsive disorder (OCD); (7) cannabis dependence; (8) coronary artery disease with stenting; (9) degenerative disc disease of the lumbar spine; and (10) left knee arthritis/chondromalacia, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1.  (Tr. 75-77).

With respect to Plaintiff's residual functional capacity, the ALJ found that Plaintiff retained the ability to perform work subject to the following limitations: (1) she can lift/carry 20 pounds occasionally and 10 pounds frequently; (2) during an 8-hour workday with normal breaks, she can stand/walk for 6 hours and sit for 6 hours; (3) she can frequently climb ramps and stairs, but can never climb ladders, ropes, or scaffolds; (4) she can frequently balance, stoop, kneel, crawl, and crouch; (5) she is limited to simple, routine, and repetitive tasks in a low stress job (defined as having occasional decision making or occasional changes in the work setting, and occasional judgment required on the job); (6) she can have no contact with the general public and only occasional contact with co-workers and supervisors; and (7) she cannot experience concentrated exposure to fumes, odors, dusts, gases, or areas of poor ventilation.  (Tr. 77).

A vocational expert testified that if limited to the extent reflected in the ALJ's RFC finding, Plaintiff would still be able to perform her past relevant work as a church janitor.  (Tr. 121-22).  Based on the vocational expert's testimony, the ALJ determined that Plaintiff was not disabled

because she retained the ability to perform her past relevant work. (Tr. 28-29). Accordingly, the ALJ concluded that Plaintiff was not entitled to disability benefits.

I. **Treating Physician Doctrine**

On April 11, 2012, Dr. Ellin Orellana, Plaintiff's treating psychiatrist, completed a form regarding Plaintiff's "Mental Residual Functional Capacity." (Tr. 640-42). The ALJ afforded only "partial weight" to the doctor's opinions. (Tr. 80). Plaintiff argues that she is entitled to relief because the ALJ failed to provide sufficient reasons for his decision to afford less than controlling weight to Dr. Orellana's opinions. The Court agrees.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and her maladies generally possess significant insight into her medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record." *Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375-76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial

medical evidence. *See Cohen*, 964 F.2d at 528; *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)); *Cutlip v. Sec'y of Health and Human Services*, 25 F.3d 284, 286-87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Gayheart*, 710 F.3d at 376. Such reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id.* (quoting *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004)). Simply stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment. *Gayheart*, 710 F.3d at 376-77.

If the ALJ affords less than controlling weight to a treating physician's opinion, the ALJ must still determine the weight to be afforded such. *Id.* at 376. In doing so, the ALJ must consider the following factors: (1) length of the treatment relationship and frequency of the examination, (2) nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, (5) the specialization of the treating source, and (6) other relevant factors. *Id.* (citing 20 C.F.R. § 404.1527). While the ALJ is not required to explicitly discuss each of these factors, the record must nevertheless reflect that the ALJ considered

7

those factors relevant to his assessment. *See, e.g., Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Undheim v. Barnhart*, 214 Fed. Appx. 448, 450 (5th Cir., Jan. 19, 2007).

The form which Dr. Orellana completed has two distinct parts. In the first part of the form, the doctor assessed Plaintiff's limitations in 20 separate categories encompassing (1) understanding and memory, (2) sustained concentration and persistence, (3) social interaction, and (4) adaptation. (Tr. 640-41). Plaintiff's abilities were characterized as "moderately limited" or "not significantly limited" in 17 categories. (Tr. 640-41). Plaintiff's abilities were characterized as "markedly limited" in 3 categories: (1) ability to work in coordination with or proximity to others without being distracted by them; (2) ability to accept instructions and respond appropriately to criticism from supervisors; and (3) ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. (Tr. 640-41).

In addition to completing the pre-printed portion of the form in question, the doctor included the following personal comments:

> Shytelia's diagnoses include major depression with psychotic features, panic disorder, post traumatic stress disorder, and trichotillomania. She has a history of several suicide attempts and psychiatric hospitalizations. She struggles with the motivation to appropriately care for herself; she sleeps on and off throughout the night waking every 2-3 hours, does not bathe regularly, and eats very little. Shytelia's mood is labile, at times tearful and will change to smiling at times.
>
> Shytelia has history of attempts to kill her ex husband by setting him on fire, poisoning him, and beating him with a pipe. She has gained skills to manage her anger appropriately and sets boundaries with him currently. If he is intoxicated and being abusive toward her, she will ask him to leave her house. She does not have current plan or intent to harm him. Shytelia struggles to manage her anger appropriately and she will get in verbal arguments with others when she feels overwhelmed or threatened.

> Shytelia experiences auditory and visual hallucinations which are often of her step mother, who laughs at her and threatens to hurt her. Shytelia will express paranoia that she believes her stepmother is watching her through her windows. Shytelia experiences flashbacks and nightmares about past abuse. She is highly anxious and pulls her hair out. She is nervous around strangers and believes others may harm her. Due to this she does not use public transportation and goes in public very little. She does not do well in crowds and prefers small settings. She will occasionally attend church services, and sits in the back so that she can easily leave if she feels panicked.
>
> The last time Shytelia was employed as a teacher's aide she enjoyed being around children because she felt they are not threatening. She got into verbal arguments with the principal and parents of students and was laid off.
>
> Shytelia's memory is fair. Her insight into her illness is improving, with medication compliance and learning coping skills for her anger. She would struggle in a work setting to get along with coworkers due to paranoia and anxiety. She does not always respond appropriately to criticism and generally distrusts strangers. Her physical health is also a factor, with arthritis limiting her ability to stand or sit for long periods of time. When her symptoms increase Shytelia will isolate herself, often due to lack of energy but also not wanting to act out on her anger so choosing to avoid others rather than get into an argument.

(Tr. 642).

The ALJ's assessment of Dr. Orellana's opinion focused exclusively on the doctor's responses to the 20 form questions identified above. (Tr. 80). The ALJ makes absolutely no mention of the doctor's additional comments and opinions quoted immediately above. As the doctor's comments reveal, her opinion as to Plaintiff's limitations and abilities is at odds with the ALJ's RFC determination. Because the ALJ completely ignored this aspect of the doctor's submission, the ALJ's decision must be reversed and remanded.

Defendant seeks to avoid this conclusion by attempting to rehabilitate the ALJ's analysis by offering several alternative rationales that the ALJ could have, but did not, proffer. Such is an insufficient basis to uphold the ALJ's decision. *See Wilson*, 378 F.3d at 546 ("[a] court cannot excuse the denial of a mandatory procedural protection simply because, as the Commissioner urges, there is sufficient evidence in the record for the ALJ to discount the treating source's opinion and, thus, a different outcome on remand is unlikely. . .to recognize substantial evidence as a defense to non-compliance with [the treating physician rule] would afford the Commissioner the ability the violate the [rule] with impunity and render the protections promised therein illusory").

## **CONCLUSION**

For the reasons articulated herein, the Court concludes that the ALJ's decision is not supported by substantial evidence. Accordingly, the Commissioner's decision is **reversed and the matter remanded for further factual findings pursuant to sentence four of 42 U.S.C. § 405(g)**. A judgment consistent with this opinion will enter.

Date: September 21, 2015         /s/ Ellen S. Carmody
                                 ELLEN S. CARMODY
                                 United States Magistrate Judge